UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 11-375-DLB

TIMONTE DESHAW HARRIS,                                          PETITIONER,

V.                          **MAGISTRATE JUDGE'S REPORT
                             AND RECOMMENDATION**

GARY BECKSTROM, *Warden,*
*Eastern Kentucky Correctional Complex,*                        RESPONDENT.

\*\*\* \*\*\* \*\*\* \*\*\*

## I.  INTRODUCTION

Petitioner, Timonte Deshaw Harris, proceeding *pro se*, filed this habeas corpus action, pursuant to 28 U.S.C. § 2254, challenging his Kentucky state court conviction of wanton murder. [Record No. 1]. Consistent with local practice, this matter has been referred to the undersigned for preparation of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Having been fully briefed, and for the reasons discussed below, IT IS RECOMMENDED that Harris' Petition [Id.] be DENIED.

## II.   FACTUAL & PROCEDURAL BACKGROUND

On June 12, 2002, a jury in Fayette County, Kentucky convicted Harris of wanton murder and he was sentenced to a thirty (30) year term of incarceration. [Record No. 19-1, at 1-3].[1]

---

[1]For ease of reference, citations to the appendix of Respondent's motion, which includes the applicable state court proceedings, will include citation to the appendix index number as well as the page numbers provided by Respondent in the lower right-hand corner of each page.

Following his conviction, Harris appealed to the Kentucky Supreme Court as a matter of right.[2]

The state's highest court affirmed his conviction on June 25, 2004. [Record No. 19-14, at 170-

183; Harris v. Commonwealth, 134 S.W.3d 603 (Ky. 2004)]. In this ruling, the court summarized

the salient facts of the case:

> At approximately 8:30 p.m. on September 15, 2001, Jeffrey ("Eenie") Reed was
> shot to death while driving a white Oldsmobile Achieva belonging to the mother
> of his cousin, Tyson Fee.  Fee was a passenger in the vehicle when the shooting
> occurred.  Fee testified that another vehicle pulled behind them as they drove
> down Merino Street in Lexington and that someone in the vehicle began shooting
> at them.  Fee attempted to return fire with his .357 magnum Smith & Wesson
> revolver, but was unsuccessful because there was no cartridge in the chamber.
> Reed was shot in the back but was able to stop and exit the vehicle before
> collapsing in the street.  Fee drove to 710 Pine Street, the home of another cousin,
> and hid his revolver and car keys under a mattress.  He then directed his cousin to
> call the police to report Reed's death.  Because of darkness, Fee was unable to
> identify the vehicle from which the shots were fired or to recognize anyone in the
> vehicle.  Two eyewitnesses testified that the shots came from a black vehicle.
> Appellant had access to a black Honda belonging to his mother.
>
> One of the eyewitnesses, however, described the black vehicle as a two-door car
> with gold rims whereas other evidence indicated that the black Honda owned by
> Appellant's mother was a four-door car without gold rims.
>
> The Commonwealth's theory was that Appellant shot Reed as part of a cycle of
> revenge and retaliation between Reed and Fee on one side and Appellant and
> Dewan Mulazim on the other.  Mulazim once described Appellant to the police as
> his "buddy" and "partner."  In support of its theory, the Commonwealth first
> proved that on August 15, 2001, Reed and Mulazim were involved in an argument
> during which Reed knocked Mulazim to the ground and Mulazim retaliated by
> shooting Reed in the leg.  Reed's girlfriend testified that on the night of
> September 14, 2001, Reed and Fee were at her apartment when they spotted
> Mulazim and Appellant in the neighborhood.  She heard someone say, "Go get a
> gun," following which Reed and Fee left her residence.  Shortly thereafter, she
> heard gunshots in the vicinity.  Fee testified that on September 15, he and Reed
> were parked in the white Oldsmobile when Appellant approached them on foot.
> Appellant accused Reed of shooting at him the previous evening.  When
> Appellant reached in his pants as if to draw a gun, Reed started the vehicle, and

---

[2]A judgment imposing a sentence of imprisonment for 20 years or more is taken directly to the Kentucky
Supreme Court. Ky. R. Crim. P. (RCr) 12.02.

2

he and Fee sped away.

Reed's cousin, Jeremiah Sullivan, testified that he encountered Appellant on the night of the shooting and that Appellant was waiving a .9mm Glock pistol, saying "I just got one of 'em!"  Appellant told Sullivan that "I rode on 'em . . . Eenie and Tyson, chased 'em down," explaining that they had shot at him the previous night because he was with Mulazim, who had previously shot. Reed.  Appellant continued to exclaim, "Well, man, I got 'em dog, I got 'em.  I know I done hit one of them.  They tried to kill me."  Appellant described how he had driven up behind their vehicle while holding his gun in front of the windshield and shooting.

When police interviewed Mulazim on September 17, 2002, he denied being with Appellant on either the night of the 14th or the night of the 15th but revealed that a man nicknamed "Mal Viddy," whom he identified as a brother of Brain Brown, was driving the vehicle from which the shots that killed Reed were fired.  The jury could have reasonably concluded that the three people the eyewitnesses observed in the black car were Appellant, Mulazim, and Horace ("Mal Viddy") Brown (who testified that he was not with Appellant when Reed was killed).  At trial, Mulazim testified that he had "made up" the story about 'Mal Viddy'," but admitted that he had shot Reed on August 15th and that someone had shot at him and Appellant on the night of September 14th.

The police found three bullet holes in Fee's white Oldsmobile.  The fatal bullet passed through the license plate holder, the trunk, the rear seat, the driver's seat, and Reed's body.  The bullet was not found, but the police discovered six .9mm casings at the crime scene.  Neither was the murder weapon found, but a ballistics expert testified that all six casings were fired from the same Glock .9mm pistol.  The medical examiner who performed the autopsy testified that the entrance wound of the bullet into Reeds's body was consistent with a wound caused by a medium-sized bullet, such as a .9mm bullet.

Harris, 134 S.W.3d at 605-07. Subsequently, Harris filed a *pro se* motion to vacate, set aside or correct his conviction pursuant to Kentucky Rules of Criminal Procedure (RCr) 11.42. Harris also moved for an evidentiary hearing as well as appointment of counsel. On September 23, 2004, the Fayette Circuit Court appointed the Department of Public Advocacy (DPA) to represent Harris, and directed the DPA to file any supplemental motions within sixty (60) days. Thereafter, appointed counsel filed a supplement to Harris's RCr 11.42 motion. [Record No. No. 19-12, at 135-162]. Harris' supplemented RCr11.42 motion contended that the circuit court had erred in failing to grant

3

him an evidentiary hearing on his pending RCr 11.42 motion and argued that Harris had been denied

the effective assistance of counsel at trial, which violated his rights under the Sixth and Fourteenth

Amendments to the United States Constitution.[Id., at 142-145]. The motion presented five (5)

grounds in support of this argument:

(1) Trial counsel failed to investigate and adequately present readily available evidence to refute and undermine the validity of the Commonwealth's theory that Timonte Harris was seeking revenge against the victim, Jeffrey Reed, by shooting him on September 15, 2001.

(2) Trial counsel failed to effectively address the issue of ballistics evidence presented in this case which enhanced the credibility of a key prosecution witness, Jeremiah Sullivan.

(3) Failure to object to the admission of Harris' statement to the police is not indisputable trial strategy.

(4) The court applied the improper standard in denying Mr. Harris an evidentiary hearing.

(5) The cumulative effect of the aforementioned errors collectively denied Harris the right to a fair jury trial, due process of law, and a reliable verdict in violation of his rights under the Sixth and Fourteenth Amendments to the United States Constitution and sections 2, 7, and 11 of the Kentucky Constitution.

 [Id., at 136-139]. On September 12, 2005, the state circuit court entered an order finding that

an evidentiary hearing was not required [Record No. 19-13, at 168] and ultimately denying Harris'

RCr 11.42 motion. [Id., at 163-169]. The Kentucky Court of Appeals affirmed that denial in an

unpublished opinion on April 27, 2007. [Record No. 19-9, at 86-101].

Thereafter, on December 19, 2007, Harris, proceeding *pro se[3],* filed another motion

requesting the trial court to amend or correct his judgment and sentence, pursuant to Kentucky Rules

---

[3] The DPA moved to withdraw as appointed counsel for purposes of Harris'RCr 60.02 appeal. In so doing, the DPA stated that it had reviewed the record in the case and had determined that this "post-conviction proceeding … is not a proceeding that a reasonable person with adequate means would be willing to bring at his own expense." The circuit court sustained that motion and ordered Harris to file a *pro se* brief if he wished to proceed with the CR 60.02 appeal. Harris v. Commonwealth, 2009 Ky. App. Unpub. LEXIS 1022, at *7 n.2 (Ky. Ct. App. Dec. 4, 2009).

of Civil Procedure (CR) 60.02 (e) and (f) and RCr 10.26. [Record No. 19-7, at 54-80]. In this

motion, Petitioner raised six (6) arguments:

> (1) The trial court erred in failing to appoint counsel and hold an evidentiary hearing on issues which could not be addressed or refuted from the record alone.

> (2) Harris was denied substantive due process when there was no basis shown for allowing Doctor Greg Davis, Kentucky State Police forensic scientist Zenobia Skinner, or Kentucky State Police firearms examiner Warren Mitchell to testify as expert witnesses for the Commonwealth.

> (3) Harris was denied substantive due process when he was denied the assistance of a defense expert witness for the offense charged, or to rely on a defense expert witness for the inconclusive allegations made.

> (4) Harris was denied substantive due process as a result of Jeremiah Sullivan's attempts to influence and impede the testimony of the Commonwealth's other witnesses in the case.

> (5) The trial court erred to Harris' substantial prejudice in not amending, correcting or vacating the judgment and sentence imposed in the case as a result of the denial of evidence of actual innocence.

> (6) Harris was denied substantive due process as a result of perjured testimony by the Commonwealth's key witness, Jeremiah Sullivan, and the Commonwealth's failure to hold a separate hearing to properly determine which of two conflicting statements was true and which was false.

[Id. at 55-56]. The state circuit court denied Harris' CR 60.02 motion on June 5, 2008 .[4] [Record

No.19-8, at 81-85]. The Kentucky Court of Appeals affirmed that denial in an unpublished opinion

on December 4, 2009, expressly finding claims 2, 3, 4, and 6 to be procedurally barred from review

on the merits because Harris had failed to comply with state procedural rules. [Record No. 19-5, at

---

[4] While awaiting the circuit court's ruling on his motion pursuant to RC 60.02 and RCr 10.26, Harris filed a habeas corpus petition in federal court pursuant to 28 U.S.C. § 2254. Petitioner asserted the same ten (10) grounds raised collectively in his RCr 11.42 and CR 60.02 motions, the same ten (10) grounds raised in his pending 28 U.S.C. § 2254 motion. Harris v. James Morgan, Civil Action 08-93-KSF, 2009 U.S. Dist. LEXIS 131480, at *4-*5 (E. D. Ky. Jan. 30, 2009). The district court dismissed the action without prejudice because Petitioner had failed to exhaust his state court remedies. Harris v. James Morgan, Civil Action 08-93-KSF, 2009 U.S. Dist. LEXIS 12933 (E. D. Ky. Feb. 19, 2009).

19-33]. Harris then moved for discretionary review in the Kentucky Supreme Court. [Record No. 19-4, at 11-18]. His motion was summarily denied on November 10, 2010. [Record No. 19-2, at 4]. Thereafter, Harris filed the pending 28 U.S.C. § 2254 petition with this Court on November 17, 2011. [Record No. 1].

In his 28 U.S.C. § 2254 petition currently before the Court, Harris asserts ten (10) grounds as the basis to vacate, set aside, or correct the state court judgment against him. Notably, each of the ten (10) grounds was raised either on his RCr 11.42 or his CR 60.02 motion:

(I) Trial counsel was ineffective for failing to investigate and adequately present readily available evidence to refute and undermine the validity of the Commonwealth's theory that Harris was seeking revenge against the victim, Jeffrey Reed.

(II) Trial counsel was ineffective for failing to effectively address the issue of ballistic evidence which enhanced the credibility of Jeremiah Sullivan, a key prosecution witness.

(III) Failure to object to the admission of Harris' statement to the police is not indisputable trial strategy.

(IV) Harris was denied substantive due process under the Sixth and Fourteenth Amendments because there was no basis shown for allowing Doctor Greg Davis, Kentucky State Police forensic scientist Zenobia Skinner, or Kentucky State Police firearms examiner Warren Mitchell to testify as expert witnesses for the Commonwealth.

(V) Harris was denied substantive due process under the Sixth and Fourteenth Amendments because he was denied the assistance of a defense expert witness to testify for the offense charged or to rely on a defense expert witness for the inconclusive allegations made.

(VI) Harris was denied substantive due process under the Sixth, Seventh, and Fourteenth Amendments because Jeremiah Sullivan, the Commonwealth's witness, attempted to influence and impede the testimony of the Commonwealth's other witnesses in the case.

(VII) This Court should amend, correct, and vacate the judgment and sentence imposed in this case as a result of the denial of evidence of actual innocence.

(VIII) Harris was denied substantive due process under the Sixth and Fourteenth Amendments because Jeremiah Sullivan, the Commonwealth's key witness, offered perjured testimony and the Commonwealth failed to hold a separate hearing to properly determine which of the conflicting statements was false.

6

(IX) The trial court erred in failing to grant Petitioner an evidentiary hearing to determine whether or not his counsel was ineffective.

(X)  The cumulative effect of the aforementioned errors collectively denied Harris the right to a fair jury trial, due process of law and a reliable verdict in violation of his rights under the Sixth and Fourteenth Amendments.

[Record No. 1.] Harris also requests this Court to appoint him counsel, to allow counsel to supplement the pleadings on his 28 U.S.C. § 2254 petition, and to set a date for an evidentiary hearing in the matter to properly determine the merits of the issues raised and presented and what relief Harris is entitled. [Record No. 1, at 31].

The State of Kentucky, on behalf of Gary Beckstrom, has responded to Petitioner's motion and addressed each of his arguments. [Record No.19]. Respondent first argues that grounds IV, V, VI, and VIII are procedurally defaulted because Petitioner failed to exhaust his state remedies. [Id., 8-10]. According to Respondent, while Petitioner raised each of these grounds in his CR 60.02 motion (as grounds 2, 3, 4, and 6), the Kentucky Court of Appeals refused to hear the merits of these claims because Harris had failed to comply with state procedural rules, and this procedural default carries into Harris' pending habeas proceeding. [Id., at 8.]. As to ground VII, Respondent asserts that this actual innocence claim, ground 5 of Harris' CR 60.02 motion, was construed by the state courts as a "cumulative effect argument" and has no substance since the grounds on which the cumulative effect was based are procedurally barred. [Id.]. Regarding grounds I, II, III, IX and X, and as an alternative for each of the other grounds, Respondent argues that the Petitioner has not presented evidence to indicate the state court decisions on the merits of his claims were contrary to or an unreasonable application of federal law, the standard on which a habeas petition is reviewed and ultimately granted. [Id., 9-11]. Accordingly, Respondent argues, Harris' claims do not merit habeas

relief. Petitioner has submitted a reply to the state, in which he expounds on his pending claims and argues that the procedural default of his claims resulted from ineffective assistance of appellate counsel during his RCr 11.42 proceedings. [Record No. 21, at 1].

### III. PROCEDURAL DEFAULT OF GROUNDS IV, V, VI, AND VIII

Before reviewing the merits of a habeas petition, the court should consider any applicable "procedural-bar issue" which would prevent consideration of Harris' claims on the merits. Lambrix v. Singletary, 520 U.S. 518, 524 (1997). Respondent correctly argues that Grounds IV, V, VI, and VIII of Harris' pending petition are procedurally defaulted because the Kentucky Court of Appeals barred review of these same claims, grounds 2, 3, 4, and 6 of his CR 60.02 motion, due to his failure to comply with state court procedures.[5] A petitioner, indeed, procedurally defaults a claim if he fails to comply with state procedural rules in presenting his claims to state courts. Williams v. Anderson, 460 F.3d 789, 806 (6th Cir. 2006) (citing Maupin v. Smith, 785 F.2d 135, 138 (6th Cir. 1986)).

The Sixth Circuit has articulated a four inquiry analysis to determine if a habeas claim has been procedurally defaulted in this way: (1) whether there is a state procedural rule that is applicable to the petitioner's claim; (2) whether the petitioner failed to comply with that rule; (3) whether the procedural rule was actually enforced in the petitioner's case; and (4) whether the state procedural forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim. Howard v. Bouchard, 405 F.3d 459, 477 (6th Cir. 2005) (citing Maupin, 785 F.2d at 138). Under the first three prongs, if "the last state court rendering a

---

[5] Respondent also argued that Petitioner's claims were barred because he failed to exhaust his state remedies. Procedural default is often confused with exhaustion. Exhaustion, however, only "refers to remedies still available at the time [the] federal [habeas] petition" is filed. Engle v. Isaac, 465 U.S. 107, at 125 n. 28 (1982). Where state court remedies are no longer available, as is the case here, procedural default, not exhaustion, bars federal habeas review. Id.; Williams, 460 F.3d at 806.

reasoned opinion in the case clearly and expressly states that its judgment rests on a state procedural bar" the federal court will find the claim to be procedurally barred. *See* Thompson v. Bell, 580 F.3d 423, 437 (6th Cir. 2009) (*quoting* Harris v. Reed, 489 U.S. 255, 263 (1989)). Under the fourth prong, a state procedural rule is "adequate" if it is "firmly established and regularly followed." Wilson v. Mitchell, 479 F.3d 491, 499 (6th Cir. 2007) (citations and quotations omitted). A procedural rule is independent when it does not rely on federal law. Id.

For claims found to be procedurally defaulted, federal courts only consider the merits of these claims if the petitioner demonstrates "'cause and actual prejudice [for the default] or that he is actually innocent.'" Bousley v. United States, 523 U.S. 614, 622 (1998). "Demonstrating prejudice requires showing that the trial was infected with constitutional error." Franklin  v. Anderson, 434 F.3d 412, 417 (6th Cir. 2006), *cert. denied*, 127 S. Ct. 941 (2007). To prove actual innocence, the petitioner "must show that it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt." Schlup v. Delo, 513 U.S. 298, 327 (1995).

Under Kentucky law, a defendant may file one post-conviction motion for relief from judgment within three years after entry of final judgment. RCr 11.42(10). Such motions are "limited to issues that were not and could not be raised on direct appeal."  Sanborn v. Commonwealth, 975 S.W.2d 905, 909 (Ky. 1998) (*overruled on other grounds by* Leonard v. Commonwealth, 279 S.W. 3d 151 (Ky. 2009). All possible grounds must be presented in the RCr 11.42 motion, as the defendant will thereafter be barred from pursuing any further post-conviction relief. RCr. 11.42(3); McQueen v. Commonwealth, 948 S.W.2d 415, 416 (Ky. 1997); Gross v. Commonwealth, 648 S.W.2d 853, 857 (Ky. 1983); *accord* George v. Seabold, 909 F.2d 157, 159 (6th Cir. 1990); Stamps v. Rees, 834 F.2d 1269, 1274 (6th Cir. 1987).

9

CR 60.02 motions under the Kentucky's rules of civil procedure are only available to provide relief from extraordinary circumstances, which "as a rule, [did] not appear during the progress of a trial." Howard v. Commonwealth, 364 S.W.2d 809, 810 (Ky. 1963). The rule is not intended as an additional opportunity to re-litigate the same issues which could reasonably have been presented by direct appeal or an RCr 11.42 proceeding. See McQueen, 948 S.W.2d at 415. Motions pursuant to RCr 10.26 are not properly considered along with a CR 60.02 motion. Stoker v. Commonwealth, 289 S.W.3d 592, 598 (Ky. App. 2009).

Grounds IV, V, VI, and VIII of Harris' pending habeas petition are subject to procedural default. These claims were not appropriately raised below and were disposed of by the Kentucky Court of Appeals because Harris failed to comply with state procedural rules. The state appellate court specifically noted its reasoning on procedural default as to each ground barred from review. First, the court addressed ground IV, Harris' claim that he was denied due process because the Commonwealth's experts were not qualified:

> In reviewing Harris's contentions concerning the qualification of the expert witnesses, we are of the opinion that this issue was one of which Harris was, or at the very least, should have been aware at the time he appealed to the Supreme Court, and at the time he filed his motion pursuant to RCr 11.42. Accordingly, we are of the opinion that he is procedurally barred from raising it now in a CR 60.02 motion.

[Record No. 19-5, at 27].  Next, the court addressed ground V, Harris' claim that he was denied due process because he was not given an expert witness to testify on his behalf:

> Harris argues that he was not afforded an expert witness in his defense, whom he presumes would have clarified what he claims was conflicting and inconclusive testimony regarding ballistics issues...In reviewing the record, we note that this issue was one which Harris raised in the supplemental motion filed as part of his prior appeal on a RCr 11.42 motion. As previously stated, the final disposition of a movant's RCr 11.42 motion shall conclude all issues which were or reasonably could have been presented in that proceeding. As the court had previously dismissed Harris's arguments concerning this issue in disposing of the prior RCr 11.42 motion,

this Court is compelled to affirm.

[Record No. 19-5, at 28]. Next, the court addressed ground VI, in which Harris asserts that he was denied due process when the Commonwealth's key witness, Jeremiah Sullivan attempted to influence the Commonwealth's other witnesses:

> Harris argues that Jeremiah Sullivan attempted to influence witness testimony...With respect to this argument, the court below again found that Harris did not state with reasonable certainty how this information, even if true, would have changed the result in his case. Further, the court noted that this information was known to Harris at the time it happened, and accordingly, should have been raised either on direct appeal, or in his 11.42 motion for post-judgment. In reviewing the record, we are again compelled to agree with the trial court on this issue. If in fact this information was known to Harris at the time of trial, it is one which he should have raised via direct appeal, or in his RCr 11.42 proceeding. In the alternative, if this affidavit contains newly discovered evidence, it is an argument more properly made pursuant to CR 60.02(b), and one which, accordingly, must have been brought no more than one year following the judgment. As Harris did not do so, we again affirm.

[Record No. 19-5, at 29]. Finally, the court of appeals addressed ground VIII, in which Harris claims that he was denied due process because he was convicted based on perjured testimony from Sullivan:

> Harris asserts that he was convicted on the basis of the "perjured" testimony of Jeremiah Sullivan, and that as a result, he was denied due process....Our Supreme Court has previously held that a criminal conviction based on perjured testimony can be evidence of such an extraordinary nature as to justify relief pursuant to CR 60.02(f), subject to the reasonable time limitation of the rule. In this instance, however, we find that this issue is one which would more properly have been raised via a direct appeal, or through Harris's RCr 11.42 motion, in light of the fact that Harris was clearly aware of the conflicting nature of the testimony at the time he appealed.

[Record No. 19-5, at 29-30]. The Kentucky Supreme Court declined discretionary review of the court of appeal's order which affirmed the trial court's denial of Harris' CR60.02 motion and expressly found his claims to be procedurally defaulted. [Record No. 19-2, at 4.]

Thus, all four (4) parts of the Sixth Circuit's test to determine procedural default are readily

11

satisfied. RCr 11.42 and CR. 60.02 [6] are applicable state procedural rules that were actually enforced by the last state court rendering an opinion on Harris' case to bar his claims. These rules do not rely on any federal law to foreclose appellate review, and have been regularly followed by Kentucky Courts. Sandborn, 975 S.W.2d at 909; McQueen, 948 S.W.2d at 415. As a result, the state procedural default "carries over to federal court and precludes habeas review" of Harris' federal constitutional claims set forth in grounds IV, V, VI, and VIII of his pending habeas petition. Simpson v. Jones, 238 F.3d 399, 406 (6th Cir. 2000). See Howard, 405 F.3d at 477; Maupin, 785 F.2d at 138.

Accordingly, unless Harris can show cause to excuse his failure to properly present these claims in state court and actual prejudice, this court may not consider the merits of these grounds. *See* Rust v. Zent, 17 F.3d 155, 160 (6th Cir. 1994) (internal citations omitted). Construing Harris' *pro se* petition liberally, it appears he claims ineffective assistance of appellate counsel during his postconviction RCr 11.42 proceeding as the cause to excuse his failure to properly present these claims in state court.  Generally, a claim of ineffective assistance of counsel in a state or federal postconviction proceeding cannot establish cause to excuse a procedural default. *See* 28 U.S.C. § 2254(i); Coleman v. Thompson, 501 U.S. 722, 755 (1991). A defendant is entitled to effective assistance of counsel only on his first appeal as a matter of right. Evitts v. Lucey, 469 U.S. 387, 394 (1985). "Coleman held that negligence on the part of a prisoner's postconviction attorney does not qualify as cause. Coleman reasoned that because the attorney is the prisoner's agent under well-settled principles of agency law,  the principal bears the risk of negligent conduct on the part

---

[6] Notably, Harris also presented his motion pursuant to RCr 10.26. It is unnecessary to analyze the procedural specifics of RCr 10.26 motions because, as the court of appeals below noted, RCr 10.26 motions cannot properly be considered along with CR 60.02 motions. [Record No. 19-5, at 32].

of his agent." Martinez v. Ryan, 132 S.Ct. 1316 (2012)(citing Maples v. Thomas, 131 S. Ct. 1718 (2011) (slip op., at 12) (internal citations and quotation omitted).

The Supreme Court has recently explained that ineffective assistance of postconviction counsel can establish cause to excuse a procedural default in one very limited circumstance: when the procedurally defaulted claim is presented in an initial-review collateral proceeding and involves the ineffective assistance of trial counsel. Martinez, 132 S.Ct. 1309-11 (holding that ineffective assistance of postconviction counsel can establish cause for the procedural default of ineffective assistance of trial counsel claims properly brought for the first time at the postconviction proceeding). Initial-review collateral proceedings arise when the postconviction proceeding provides the petitioner's first opportunity for the state to hear his claim. In these situations, procedural default may preclude review by any court, state or federal, of trial counsel's alleged errors. Martinez, 132 S. Ct., at 1316.

The situation in Martinez is not present here, as none of Harris' procedurally defaulted claims involve the ineffective assistance of trial counsel. In fact, this Court will review each of these claims, grounds I, II, and III, on the merits. Thus, Harris' assertion of ineffective assistance of postconviction counsel cannot establish cause to excuse his procedural default. Moreover, he presents no arguments regarding actual prejudice caused by this procedural default. Accordingly, grounds IV, V, VI[7], and VIII are found to be in procedural default cannot be reviewed on the merits.

_____

[7] In an abundance of caution, the Court addresses the Kentucky Court of Appeals alternate ground for ruling against Defendant on Ground VI, his claim that Jeremiah Sullivan presented perjured testimony. The Kentucky Court of Appeals noted that " if this affidavit contains newly discovered evidence, it is an argument more properly made pursuant to CR 60.02(b), and one which, accordingly, must have been brought no more than one year following the judgment...Harris did not do so. " [Record No.19-5, at 29]. This Court notes that Harris argument for cause to excuse his default, ineffective assistance of counsel at his RCr 11.42 proceeding, is inapplicable to excuse this alternative ground for procedural default, as Harris properly proceeded in his CR 60.02 motion pro se.

### IV. ANALYSIS OF REMAINING CLAIMS

### STANDARD OF REVIEW

Subject to a one-year statute of limitations, state prisoners may seek federal habeas corpus relief on the ground that they are being held in custody in violation of the Constitution, law or treaties of the United States. 28 U.S.C. § 2244(d)(1);  Reed v. Farley, 512 U.S. 339, 347 (1994). "Federal habeas corpus relief does not lie for errors of state law. . .[and] it is not the province of a federal habeas corpus court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-8 (1991). Accordingly, the proper inquiry herein is whether the alleged errors violated the Petitioner's federal rights.  Id.

Because Harris filed his habeas petition on November 17, 2011, [Record No. 1] his claims are governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. Pursuant to AEDPA, an application for a writ of habeas corpus on behalf of a person in custody on a state court conviction shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim:

>   (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

>   (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceeding.

28 U.S.C. § 2254(d).

Thus, a federal court may grant a writ of habeas corpus based on a determination of law rendered by a state court under two different clauses. Under the "contrary to" clause, a federal court may grant habeas relief if the state court arrives at a conclusion opposite that of the

14

Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has decided on a set of materially indistinguishable facts. <u>Williams v. Taylor</u>, 529 U.S. 362, 405-06 (2000); <u>White v. Mitchell</u>, 431 F.3d 517, 523 (6th Cir. 2005); <u>Jones v. Jamrog</u>, 414 F.3d 585, 591 (6th Cir. 2005). The words "contrary to" should be construed to mean "diametrically different, opposite in character or nature, or mutually opposed." <u>Williams</u>, 529 U.S. at 405.

Under the "unreasonable application" clause, a federal court may grant habeas relief if the state court identifies the correct governing legal principle from the Supreme Court's decision but unreasonably applies that principle to the facts. <u>Id</u>., at 407-08. Significantly, relief is not available if the state court merely applied clearly established federal law erroneously or incorrectly. <u>Id</u>., at 411. The application must be "objectively unreasonable." <u>Id</u>., at 407.;<u>Lordi v. Ishee</u>, 384 F.3d 189, 195 (6th Cir. 2004). Relief is also available under the clause if the state court decision either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context. <u>William</u>, 529 U.S. at 407; <u>Arnett v. Jackson</u>, 393 F.3d 681, 686 (6th Cir. 2004). "The state-court decision need not refer to relevant Supreme Court cases or even demonstrate an awareness of them." <u>Slagle v. Bagley</u>, 457 F.3d 501, 513 (6th Cir. 2006) (<em>citing</em> <u>Early v. Packer</u>, 537 U.S. 3, 8 (2002) (<em>per curiam</em>)); <em>see also</em> <u>Stewart v. Erwin</u>, 503 F.3d 488, 493 (6th 2007). "Instead, it is sufficient that the result and reasoning are consistent with Supreme Court precedent." <u>Slagle</u>, 457 F.3d at 514; <em>see also</em> <u>Stewart</u>,503 F.3d at 493.

Ultimately, AEDPA's highly deferential standard requires that this Court give the state court decision "the benefit of the doubt." <u>Slagle v. Bagey</u>, 457 F.3d 501, 514 (6th Cir. 2006). A federal habeas court must give complete deference to evidentiary-supported state court findings

of fact pursuant to the presumption of correctness now found in 28 U.S.C. § 2254(e)(1). Sumner v. Mata, 455 U.S. 591, 597 (1982). Likewise, this being a *pro se* petition, the undersigned is mindful that it is held to a less stringent standard than those drafted by legal counsel. *See* Cruz v. Beto, 405 U.S. 319 (1972).

<u>GROUNDS I, II, AND III - INEFFECTIVE ASSISTANCE OF COUNSEL</u>

Grounds I, II, and III all relate to the issue of ineffective assistance of counsel and will be considered together below.

The Supreme Court of the United States presently holds that in order for a defendant to have his or her conviction overturned based upon ineffective assistance of counsel, two elements must be satisfied: (1) the defendant must show that counsel's performance was so defective that he/she was not functioning as counsel as guaranteed under the Sixth Amendment; and, (2) the defendant must show that prejudice resulted from the defective performance. Strickland v. Washington, 466 U.S. 668, 688 (1984).  The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding. [Id. at 692.]  Accordingly, any deficiencies in counsel's performance must be prejudicial to the defendant in order to constitute ineffective assistance. [Id.].

 Under the Strickland analysis, the performance inquiry focuses on whether counsel's assistance was reasonable considering the totality of the circumstances. [Id. at 688] The prejudice inquiry focuses on whether the defendant is able to establish a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. [Id. at 694.] A reasonable probability is a probability sufficient to undermine confidence in the outcome. [Id. at 692]. Thus, an error by counsel, even if professionally

16

unreasonable, does not warrant setting aside the judgement of a criminal proceeding if the error did not affect the judgement. [Id. at 691.] Significantly, the reviewing court "should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id.,at 690. "Defendants alleging the ineffective assistance of counsel bear 'a heavy burden of proof.'" Pough v. United States, 442 F.3d 959, 966 (6th Cir. 2006) (citing Whiting v Burt, 395 F.3d 602, 617 (6th Cir. 2005)).

Under AEDPA, a state court's ruling on an ineffective assistance of counsel claim presented below must be an unreasonable application of the Strickland standard in order to justify federal habeas relief. Bell v. Cone, 535 U.S. 685, 693-94 (2002); Scott v. Elo, 302 F.3d 598, 606-07 (6th Cir. 2002); Mongo v. Edwards, 281 F.3d 568, 582-83 (6th Cir. 2002). When analyzing an ineffective assistance of counsel claim on habeas review, the appellate court considers "the totality of the evidence both adduced at trial, and the evidence adduced in the habeas proceeding." Towns v. Smith, 395 F.3d 251, 257 (6th Cir. 2005)(quoting Wiggins v. Smith, 539 U.S. 510, 536 (2003)).

Three of the grounds on which Harris relies in his pending habeas petition allege ineffective assistance of trial counsel violated his Sixth Amendment right to counsel:

> I. Trial counsel was ineffective for failing to investigate and adequately present readily available evidence to refute and undermine the validity of the Commonwealth's theory that Harris was seeking revenge against the victim, Jeffrey Reed..
>
> II. Trial counsel was ineffective for failing to effectively address the issue of ballistic evidence which enhanced the credibility of a key prosecution witness.
>
> III. Trial counsel was ineffective for failing to object to admission of Petitioner's statement to the police.

In Ground I, Harris presents the general claim that trial counsel was ineffective for failing to

17

investigate and adequately present evidence to refute the validity of the Commonwealth's theory that he was seeking revenge against the victim, Jeffrey Reed on September 15, 2001.[Record No. 1, at 9.] Specifically, Harris claims that he had witnesses that would have established two key facts, (1) he was somewhere else, drunk and passed out, when the shooting occurred; and (2) Harris and Mr. Muzalim did not have the close relationship that the Commonwealth alleged. [Id., at 9-11]. Petitioner raised this same general claim in his RCr 11.42 motion to set aside his judgement, but only in regards to the second point concerning his relationship with Mr. Muzalim. In analyzing this claim of ineffectiveness, the state trial and appellate courts employed the Supreme Court's Strickland analysis, detailed above. The circuit court found that Harris had the burden of proving a reasonable probability that, but for counsel's unprofessional errors, the results of the trial would have been different. According to the circuit court, Harris himself supplied a possible motive to support the Commonwealth's theory when he acknowledged that Reed and Fee were after him the night before Reed's death, and accordingly, he had failed to meet his burden of proof under Strickland. [Record No. 19-13, at 166.] The Kentucky Court of Appeals affirmed this finding.[Record No. 19-9, at 93.] The appellate court noted that, trial counsel had, in fact, objected to the use of the word "partner" in references to Mr. Muzalim at trial. Furthermore, trial counsel presented evidence which refuted that the two were partners. [Id.]. Accordingly, the court found, Harris had not met his burden and his claim of ineffective assistance "had no merit." [Id., 93-94].This analysis represents a reasonable application of clearly established federal law. See Strickland, 466 U.S. 668.

The Court is reluctant to address the merits of Harris' additional point that he had witnesses to prove that he was "drunk and passed out" at the time of the victim's shooting. The failure  to

bring claims before the state court and later asserting those claims in a federal habeas proceeding when the time to bring them in state court has lapsed results in the same procedural default as failing to abide by state court procedural rules, outlined in detail above. Williams, 460 F.3d at 808. In an abundance of caution, because Harris claimed ineffective assistance of counsel at his RCr 11.42 proceeding as cause for his procedural default, presenting a Martinez situation, and because Respondent did not argue that this claim was subject to default, the Court will look at the merits of Harris's additional point. Martinez, 132 S.Ct. 1316. And, just as the state court found on Harris' original point, Harris has failed to meet his burden under Strickland. In conducting pretrial investigation, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary....a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Strickland, 446 U.S. at 690-91. "The failure to call witnesses does not automatically establish ineffectiveness...[i]n the absence of any demonstration of prejudice."Urvban v. Ohio Adult Parole Auth., 116 Fed. Appx. 617, 623 (6th Cir. 2004). Here, Harris presents no facts to support the conclusive allegation that counsel's failure to investigate the "drunk and passed out" defense was unreasonable. Moreover, he presents no argument to demonstrate any prejudice resulting from counsel's decision.  Thus, applying a heavy measure of deference to Harris' counsel's decision, the Court finds no merit in Harris' ineffectiveness claim.

In ground II, Harris asserts that trial counsel failed to effectively address the issue of ballistics evidence presented in this case. [Record No. 1 at 13-14]. Harris first argues that trial counsel should have objected to the "alleged" expert testimony in regards to ballistics. [Id., at

14].  He then argues that the ballistics evidence in the case was inconclusive as to what weapon was actually used and counsel should have retained a defense expert to refute the ballistics report. [Id.]. Furthermore, Harris contends the ballistics report only served to bolster testimony of the Commonwealth's witnesses: 1) the Commonwealth's expert who testified that casings from a 9-mm Glock were found at the scene of the crime for which Harris was charged and 2) the Commonwealth's key witness, Jeremiah Sullivan, who declared he saw Harris on the night of the shooting waiving around a Glock. [Id.].

Harris raised these same claims in his state court RCr 11.42 proceeding. In analyzing this claim of ineffectiveness, the state, again, employed the correct Strickland analysis. The state circuit court held that Harris' ballistics argument did not signify the outcome of the case against him would have been any different had his counsel made the arguments concerning ballistics evidence he recommended. [Record No. 19-13, at 167].  The Kentucky Court of Appeals affirmed that holding. [Record No. 19-9, at 95- 6]. The appellate court reasoned," any failure on trial counsel's part to challenge the ballistics evidence presented at trial did not prejudice [Harris'] defense to the extent that counsel would have been considered ineffective. [Id., at 96]. This is because Mr. Sullivan testified that he saw [Harris] waiving a 9-millimeter Glock and stating that he had shot someone by holding his pistol out in front of a car's windshield and shooting at the person."[Id.]. According to the appellate court,  because of Mr. Sullivan's testimony, Harris could not successfully challenge his counsel's performance because he could not prove it had  prejudiced his defense.[Id.] The appellate court also noted Harris even acknowledged that trial counsel was able to elicit testimony alleging that people in another vehicle had been trying to shoot at a vehicle in which the victim rode the same day he was killed,

evidence which explicitly refuted Sullivan's testimony implying that Harris was guilty. [Id., at 95-6]. This, according to the appellate court, also showed that trial counsel's performance was not deficient and he had not rendered ineffective assistance. This analysis on ground II was also a reasonable application of the clearly established Strickland analysis. Strickland, 466 U.S. 668.

In ground III, Harris asserts trial counsel was ineffective for failing to object to the admission of his statements to the police. He claims that after he invoked his Fifth Amendment rights, the police continued to question him, later playing a recording of that interview to the jury. [Record No. 1 at 15-16]. According to Harris, counsel's failure to object to this admission "was not sound undisputable trial strategy." [Id.]. He further contends that the Kentucky Court of Appeals incorrectly decided the merits of this issue, without taking into consideration the totality of the circumstances. [Id.]. Harris relies on the opinion of the United States Supreme Court which states, "if the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease."  [Id. quoting Miranda v. Arizona, 384 U.S. 436 (1966)]. He recounts that he plainly stated, "can you take me to jail," and further "all right, then I'm ready to go then," and argues that upon these requests, the questioning and interrogation should have immediately ceased, and should not have been played to the jury at trial. [Record No. 1, at 16-17].

Harris raised this same claim in his RCr 11.42 proceeding. And again, the state court applied the appropriate Strickland analysis and found his claim to be without merit. The circuit court reasoned that Harris' trial counsel employed effective and reasonable trial strategy:

> Harris contends that his trial counsel was ineffective because he failed to object to admission of [Harris'] statement to the police and refers to a portion of the statement where he informs the officer that he no longer wishes to talk. This statement was made after Harris had already stated the following: That Jeff Reed

had shot at him days earlier; that he was on Breckenridge Street on the night of the shooting; that he was drinking that night; driving his mother's car; and that he had been on the run since the shooting. Even if the motion to suppress those statements had been granted those prior statements would not have been suppressed. Further, during the pre-trial hearing on June 7, 2002 trial counsel discussed those parts of the statement he wanted redacted and the Court ordered some redactions, showing the trial counsel was knowledgeable of the contents of Harris' statement. The Court agrees that trial counsel's decision not to object to the admission of movant's statement at trial was an effective and acceptable trial strategy.

[Record No. 19-13, at 164]. The Kentucky Court of Appeals affirmed this ruling. [Record No. 19-9, at 97-8]. The appellate court found that trial counsel, "clearly objected to certain parts of the statement, and it may have been his trial strategy to not object to the admission of the entire statement" because one part of the statement provided an alibi for Harris. [Id]. Citing Strickland, the state appellate court found that Harris could not show that trial counsel rendered ineffective assistance in failing to object to his entire statement. Again, the state court analysis of ground III presents a reasonable application of clearly established federal law. See Strickland, 466 U.S. 668.

Harris neglects to explain how the state court decisions denying relief on his ineffective assistance of trial counsel claims were either contrary to clearly established federal law or involved an unreasonable application of clearly established federal law. See Williams, 529 U.S. at 412-13. A review of the Kentucky state court decisions on his claims shows a reasonable application of the correct, long-standing test for ineffective assistance of counsel as developed by the Supreme Court. See Strickland, 466 U.S. 668. Thus, based on a thorough review of the record below, the record procured in this proceeding, and the applicable law, this Court find that the state court's decisions on Harris' ineffective assistance of counsel claims provide no basis for habeas relief.

## GROUND IX - THE TRIAL COURT'S FAILURE TO GRANT AN EVIDENTIARY

<u>HEARING</u>

In Ground IX, Harris contends the state court erred in failing to grant him an evidentiary hearing and in failing to determine that he was denied the effective assistance of counsel in violation of his rights under the Sixth and Fourteenth Amendments to the United States Constitution. [Record No. 1 at 36]. As discussed in the section above, the trial court employed the Supreme Court's <u>Strickland</u> analysis reasonably, and this Court finds no ground to grant habeas relief under Harris' ineffective assistance of counsel argument. This section will only analyze ground IX in regards to the state court's failure to grant an evidentiary hearing.

Harris specifically argues that the issues presented in his state court post-conviction review could not be properly addressed or refuted from the record alone. [Record No. 1, at 36]. According to Harris, the trial record was silent in regards to the issues presented, and therefore the trial court erred in failing to hold an evidentiary hearing to properly determine the merits of the issues raised and presented. [<u>Id</u>.]. Harris also contends that Kentucky courts have held when the issues cannot be addressed or refuted from the record alone, an evidentiary hearing should be held. [<u>Id</u>. *citing* <u>Fraser v. Commonwealth</u>, 59 S.W.3d 448 (2001). Harris references no federal law to support his assertion that his state-post conviction proceedings were constitutionally defective.

Harris raised this claim in both his RCr 11.42 and his CR 60.02 proceedings in state court. It is unclear in his pending habeas motion for which state court post-conviction proceeding that Harris claims the error in failing to grant the hearing occurred. The Court will assume the argument applies to both proceedings. In analyzing the claim in his RCr 11.42 motion, the circuit court and Kentucky Court of Appeals noted that an evidentiary hearing was not required because

23

Harris could not meet the two-pronged test as laid out in <u>Strickland</u> and thus, the hearing was not required under state law, as developed in <u>Fraser v. Commonwealth</u>, 59 S.W.3d, at 448. [Record Nos. 19-9, at 168 & 19-13, at 98]. According to the state appellate court, because the lower court could determine from the record that Harris' ineffective assistance of counsel claims lacked merit under <u>Strickland</u>, the circuit court properly denied his request for an evidentiary hearing pursuant to RCr 11.42(5), <u>Fraser v. Commonwealth</u>, 59 S.W.3d, at 449, and <u>Sparks v. Commonwealth</u>, 721 S.W.2d 726, 727 (Ky. App. 1986). [Record No. 19-13, at 98-9 ] In analyzing this claim in his CR 60.02, the circuit court held Harris had failed to affirmatively state facts which justified vacating his judgment pursuant to CR 60.02 and an evidentiary hearing was not required. [Record No. 19-8, at 84]. The Kentucky Court of Appeals affirmed, noting that all issues could be adequately decided from a review of the record and an evidentiary hearing was not necessary to deny him relief pursuant to CR 60.02. [Record No. 19-5, at 25].

As the state court decisions denying Harris' request for an evidentiary hearing rested solely on state law, not federal law, Harris' argument is not cognizable on federal habeas review. The Sixth Circuit has held that a claim a Kentucky state court failed to hold an evidentiary hearing on a motion for post-conviction relief "cannot be heard by this court since the writ of habeas corpus is not an appropriate tool for challenging errors or deficiencies in state post-conviction proceedings. Rather, the writ is reserved for constitutional errors underlying the conviction itself." <u>Sherley v. Parker</u>, 229 F.3d 1153 (Table) [*published in full-text format at* 2000 U.S. App. LEXIS 19805, at *6 (6th Cir. Aug. 8, 2000). *See also* <u>Cornwell v. Bradshaw,</u> 559 F.3d 398, 411 (6th Cir. 2009). And, "even if such review were possible, the decision as to whether to hold the hearing is a question of state law; therefore, the decision of the Kentucky courts would be

binding on habeas review." <u>Stratton v. Hall</u>, Criminal Action 10-107-KKC , 2010 U.S. Dist. LEXIS 141788, 2010 WL 5922110, at * 16 (E.D.Ky. Dec. 28, 2010). Consequently, the Kentucky courts' failure to conduct an evidentiary hearing at either of Harris' state court  post-conviction proceedings provides no basis to grant Harris' federal habeas relief.

<u>GROUND VII AND X - CUMULATIVE EFFECT ARGUMENTS</u>

Harris presents two grounds in support of his petition which assert that the cumulative effect of the errors  he asserts collectively provide the basis for habeas relief. In Ground X, Harris specifically contends that "the cumulative effect of the aforementioned errors collectively denied him of the right to a fair jury trial, due process of law and a reliable verdict in violation of his rights under the Sixth and Fourteenth Amendments to the United States Constitution." [Record No. 1, at 37]. In ground VII, Harris asserts that "this Court should amend, correct, and vacate the judgment and sentence imposed on him in this case a result of the denial of evidence of actual innocence." [Record No. 1, at 28].

Ground VII is not conspicuously a cumulative effect argument, but must also be construed as such.  Harris uses ground VII to assert his previously asserted claims under the umbrella that these arguments prove him "actually innocent."  He argues that he was denied evidence of actual innocence by: (1) the denial of expert witnesses; (2) the denial of a pathological expert witness who may have been able to contravene allegations of the entrance and exit wounds; and (3) not informing the jury of Jeremiah Sullivan's alleged perjury and witness tampering. [Id., at 28-9]. According to Harris, had the jury been informed of Sullivan's perjured testimony, had an expert witness been provided for his defense, and had the Commonwealth had to explain why tests were not run on Fee's .357 magnum gun, the requisite reasonable doubt to prove "actual

innocence"would have been created. [Id., at 30 *citing* Schlup v. Delo, 513 U.S. 298, 327 (1995). He also points out that the state court decision in this matter failed to address the merits of these issues, or to hold an evidentiary hearing to properly consider the merits, thus denying evidence of actual innocence. [Id., at 29]. Harris raised ground VII in his state court CR 60.02 proceeding. The state circuit court which first reviewed the claim construed it as a cumulative effect argument. According to the court, Harris argument seemed to suggest that, "cumulatively, if the allegations submitted by him were true, he would be entitled to extraordinary relief of CR 60.02." [Record No. 19-8, at 84]. The Kentucky Court of Appeals affirmed this finding, holding that "as the court below correctly stated , this [actual innocence] argument, seems to suggest that cumulatively, if the allegations submitted by Harris were true, he would be entitled to extraordinary relief pursuant to CR 60.02." [Record No. 19-5, at 31].  This Court is compelled to agree with the state court's understanding of Harris's claim in ground VII.

Post AEDPA, cumulative error is not a ground for § 2254 relief in this Circuit. *See, e.g.*, Williams v. Anderson, 460 F.3d 789, 816 (6th Cir. 2006) ("[T]he law of this Circuit is that cumulative error claims are not cognizable on habeas because the Supreme Court has not spoken on this issue.") Williams 460, F.3d at 816 (*citing* Moore v. Parker, 425 F.3d 250, 256 (6th Cir. 2005)). "No matter how misguided this case law may be, it binds us." Williams, 460 F.3d at 816 (*citing* Turker v. Ohio Dep't of Rehabilitation & Corrections, 157 F.3d 453, 457-58.) Accordingly, ground VII and X provide no basis to grant Harris habeas relief.

## V. PETITIONER"S REQUEST FOR AN EVIDENTIARY HEARING AND APPOINTMENT OF COUNSEL

It is unnecessary to grant Harris' request for an evidentiary hearing or the appointment of counsel. In deciding whether to grant an evidentiary hearing, a federal court must consider

whether such a hearing "could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007). Because the deferential standards prescribed by 28 U.S.C. § 2254 dictate whether to grant habeas relief, "a federal court must take into account those standards in deciding whether an evidentiary hearing is appropriate." <u>Id</u>. If the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing. <u>Id</u>., at 474 (*citing* <u>Totten v. Merkle</u>, 137 F.3d 1172, 1176 (1998).

Here, with grounds IV, V, VI, and VIII subject to procedural defaulted and grounds VII, IX and X not cognizable on review, the Court is only left with grounds I, II, and III, ineffective assistance of trial counsel claims, to decide on the merits.  Accordingly, the Court's judgment denying Harris' habeas petition does not turn on factual assertions. Moreover, considering AEDPA deference, the Court can adequately decide, from the record alone, the state court conviction and sentence did not deprive Harris of his constitutional rights as the state court's <u>Strickland</u> application was neither contrary to nor an unreasonable application of federal law. Thus, an evidentiary hearing is unnecessary.

Regarding the appointment of counsel, generally, a prisoner challenging the legality of his conviction enjoys no constitutional right to court-appointed counsel. <u>McCleskey v. Zant</u>, 499 U.S. 467, 495 (1991); <u>Cobas v. Burgess</u>, 306 F.3d 441, 444 (6th Cir. 2002).  The Court, however, may provide representation "for any financially eligible person" seeking habeas relief when "the interests of justice so require." 18 U.S.C. § 3006A(a)(2).  When an evidentiary hearing is not required, appointment of counsel is within the sound discretion of the Court, unless "the denial of counsel results in fundamental unfairness impinging on due process rights."

27

Reneer v. Sewell, 975 F.2d 258, 261 (6th Cir. 1992) (internal quotations and citations omitted). A federal court considers certain factors when determining whether the interests of justice require appointment of counsel.  These factors include the legal and factual complexity of the case, the defendant's ability to investigate and present his claims, and any other relevant factors. Hoggard v. Purkett, 29 F.3d 469, 471 (8th Cir. 1994).  Based on the habeas corpus petition and accompanying motions, it appears that the Petitioner has the ability to present his claims. As no evidentiary hearing is required for the Court to decide the case, the Court finds that the interests of justice do not require appointment of counsel.

## VI. CONCLUSION

None of the grounds which Harris asserts provide a basis to grant him relief pursuant to 28 U.S.C. § 2254. For the reasons set forth above, IT IS RECOMMENDED THAT Harris' petition for writ of habeas corpus, including his requests for appointed counsel and for an evidentiary hearing, [Record No. 1] be DENIED.

The parties are directed to 28 U.S.C. § 636(b)(1) for a review of appellate rights governing this Report and Recommendation.  Specific objections to this Report and Recommendation must be filed within fourteen (14) days from the date of service thereof or further appeal is waived.  United States v. Campbell, 261 F.3d 628, 632 (6th Cir. 2001); Thomas v. Arn, 728 F.2d 813, 815 (6th Cir. 1984). General objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal.  Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004); Miller v. Currie, 50 F.3d 373, 380 (6th Cir. 1995).

Signed October 30, 2012.



Signed By:

Edward B. Atkins   EBA

United States Magistrate Judge